'07 CIV 9676

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
SUSAN TEEMAN, individually, and as a
shareholder on behalf of Teeman Perley Gilmartin,
Inc.,

                  *Plaintiff*,

     – against –

MARYBETH GILMARTIN and AMY ARCHER,

                  *Defendants*.
-------------------------------------------------------------X

Case No: _____

**COMPLAINT**

OCT 3 1 2007

U.S.D.C. S.D. N.Y.
CASHIERS

**JURY TRIAL DEMANDED**

    Plaintiff SUSAN TEEMAN, individually, and as a shareholder on behalf of Teeman Perley

Gilmartin, Inc., by her attorneys, Judd Burstein, P.C., as and for her complaint, alleges as follows:

## JURISDICTION AND VENUE

    1.    This Court has subject matter jurisdiction pursuant to 18 U.S.C. § 1964.

    2.    Venue lies in this District pursuant to 28 U.S.C. § 1391(b)(2) and 18 U.S.C. §

1965(a).

## THE PARTIES

    3.    Plaintiff Susan Teeman ("Plaintiff") is a citizen of the State of New York. She is a

50% shareholder in nominal Plaintiff Teeman Perley Gilmartin, Inc. ("TPG").

    4.    TPG is a corporation duly organized under the laws of the State of New York, with

a principal place of business in New York, New York. It is engaged in the executive placement

business.

    5.    On information and belief, Defendant Marybeth Gilmartin ("MBG") is a citizen of

the State of Connecticut. She is the other 50% shareholder in TPG.

6.    On information and belief, Defendant Amy Archer ("Archer") is a citizen of the State of New York. She is an employee of TPG, and is responsible for supervising and maintaining TPG's financial transactions and bookkeeping.

## ALLEGATIONS COMMON TO ALL CLAIMS FOR RELIEF

7.    Commencing in January of 2003, and continuing until at least September of 2007, MBG and Archer (collectively "Defendants") engaged in a scheme to defraud Plaintiff, TPG, as well as federal and state taxing authorities, by looting TPG through the use of TPG funds to pay MBG's personal, non-business related expenses. Thereafter, Archer, at MBG's direction, provided accountings to TPG's accountant which falsely listed these personal expenses as legitimate business expenses of TPG. TPG's accountant then filed United States and New York State tax returns which MBG and Archer knew were fraudulent.

8.    As of January 1, 2003, Plaintiff, although capable of performing as both the President and/or Secretary, as well as a Director of TPG, ceded complete control of TPG's day-to-day affairs, including control of all of TPG's financial affairs, to MBG.

9.    Thereafter, MBG commenced looting TPG, as noted above, through the use of TPG funds to pay her personal, non-business related expenses. Archer aided and abetted this fraud by actually paying MBG's expenses and/or falsely categorizing those personal expenses as legitimate business expenses in TPG's books and records. This fraud was hidden from Plaintiff.

10.    Annexed hereto as Exhibit A, and incorporated by reference herein, is a detailed listing of some of those personal expenses paid by Archer in furtherance of the fraud, the date of the payment, and the payee. On information and belief, all of these payments – other than some of the

payments made directly to MBG – were transmitted to the payees through the United States mail or by overnight delivery service.

11.     On information and belief, the sources of which include the fact that these expenses are so obviously non-business related, both MBG and Archer knew that the payments were falsely categorized as business expenses and intended that the books and records of TPG falsely characterize them as such.

12.     On or about April 18, 2006, TPG filed 2005 United States and New York State tax returns – either by mail or by a wire transmission – which falsely listed the expenditures set forth in Exhibit A hereto as legitimate business expenses.  These submissions were intended to defraud United States and New York State taxing authorities.  These returns were based upon accountings provided by Archer, at MBG's direction, to TPG's accountant.

13.     On or about April 23, 2007, TPG filed 2006 United States and New York State tax returns – either by mail or by a wire transmission – which falsely listed the expenditures set forth in Exhibit A hereto as legitimate business expenses.  These submissions were intended to defraud United States and New York State taxing authorities.  These returns were based upon accountings provided by Archer, at MBG's direction, to TPG's accountant.

## FIRST CLAIM FOR RELIEF

14.     Plaintiff repeats and realleges the allegations contained in all preceding Paragraphs as if fully and completely set forth herein.

15.     TPG is a racketeering enterprise as that term is defined by 18 U.S.C. § 1961(4).  In that TPG maintains offices in at least New York, Connecticut, and London, England, and also

3

provides services to clients located outside of the State of New York, the affairs of TPG affect interstate and foreign commerce.

16.    MBG, by reason of her control of the day-to-day affairs of TPG, controls and operates TPG.

17.    Archer, by reason of her role as the bookkeeper and as the person who prepares the checks at TPG, participated in the operation of TPG.

18.    From 2003 to date, MBG and Archer knowingly and intentionally participated in the schemes to defraud that are alleged above in Paragraphs 7-13. In furtherance of those schemes, Defendants caused at least the following mail and wire communications to be made in violation of 18 U.S.C. §§ 1341 and 1343:

a.    The mailing or overnight delivery of the checks (other than those paid directly to MBG) listed in Exhibit A and incorporated by reference herein;

b.    The mailing, overnight delivery or wire transmission of TPG's 2005 and 2006 tax returns;

c.    Numerous telephone calls between Archer in New York and MBG in Connecticut, Massachusetts and London, England;

d.    Numerous telephone calls between Archer in New York and David Yoshida, TPG's accountant, in Massachusetts; and

e.    The mailing, overnight delivery, faxing and/or e-mailing of TPG financial information by Archer in New York to David Yoshida in Massachusetts.

19.    Each of these communications served to further the schemes to defraud set forth above, although the content of any particular communication may not have been fraudulent. Each

4

wire transmission was a separate violation of 18 U.S.C. § 1343 by Defendants, and each communication sent by mail or overnight delivery was a separate violation of 18 U.S.C. § 1341 by Defendants. As such, each of these statutory violations were separate racketeering activities as that term is defined by 18 U.S.C. § 1961(1).

20.    The racketeering acts committed by Defendants were related in that they were all part of the same fraudulent schemes involving TPG. They also had continuity in that they spanned a period of more than four years and, further, would have continued but for this action.

21.    As a result thereof, Defendants have engaged in a pattern of racketeering activity as that term is defined by 18 U.S.C. § 1961(5), and participated in TPG through that pattern of racketeering activity.

22.    TPG has been injured in its property and business and is entitled to recover three times its actual damages as determined at trial, plus attorneys' fees.

23.    No demand to commence this action directly against MBG and Archer has been made upon TPG's Board of Directors. Such demand would be futile in that MBG is one of only two Directors of TPG.

## SECOND CLAIM FOR RELIEF

24.    Plaintiff repeats and realleges the allegations contained in all preceding Paragraphs as if fully and completely set forth herein.

25.    By reason of the foregoing, Defendants herein have violated 18 U.S.C. § 1962(d).

26.    TPG has been injured in its property and business and is entitled to recover three times its actual damages as determined at trial plus attorneys' fees.

27.    No demand to commence this action directly against MBG and Archer has been made upon the Board of Directors. Such demand would be futile in that MBG is one of only two Directors of TPG.

### THIRD CLAIM FOR RELIEF

28.    Plaintiff repeats and realleges the allegations contained in all preceding Paragraphs as if fully and completely set forth herein.

29.    By reason thereof, MBG and Archer have each breached their fiduciary obligations to TPG, and TPG has been damaged thereby in an amount to be determined at trial. Further, pursuant to, *inter alia, Phansalkar v. Andersen Weinroth & Co.*, L.P., 344 F.3d 184 (2d Cir. 2003), all of MBG's and Archer's compensation received from TPG after their first breach of fiduciary duty should be forfeited.

30.    In addition, because Defendants' conduct was wanton, willful and malicious, punitive damages in the amount of no less than $3,000,000 should be awarded.

### FOURTH CLAIM FOR RELIEF

31.    In addition to her duties for TPG, Archer also performed personal services for Plaintiff, such as arranging for Plaintiff's home insurance. As such, she owed a fiduciary duty to Plaintiff.

32.    On information and belief, Archer breached her fiduciary duty to Plaintiff by engaging in self-interested transactions, including arranging for Plaintiff to purchase excessively expensive home insurance for which her brother was the broker.

33.    On information and belief, MBG knowingly participated in that breach.

6

34.    By reason thereof, Plaintiff has been damaged thereby in an amount to be determined at trial.

35.    In addition, because Defendants' conduct was wanton, willful and malicious, punitive damages in the amount of no less than $3,000,000 should be awarded.

### FIFTH CLAIM FOR RELIEF

36.    Plaintiff repeats and realleges the allegations contained in all preceding Paragraphs as if fully and completely set forth herein.

37.    By reason of the foregoing, Defendants have been unjustly enriched at the expense of TPG and Plaintiff.

38.    By reason of this unjust enrichment, Defendants must be required to pay TPG and Plaintiff amounts to be determined at trial.

WHEREFORE, Plaintiff demands judgment as follows:

A.    On Plaintiff's First and Second Claims for Relief, damages awarded against Defendants and in favor of TPG in an amount to be determined at trial, and then trebled, plus reasonable attorneys' fees.

B.    On Plaintiff's Third Claim for Relief, damages in favor of TPG against Defendants in an amount to be determined at trial, including forfeiture of Defendants' compensation, plus punitive damages believed to exceed $3,000,000.

C.    On Plaintiff's Fourth Claim for Relief, damages in favor of Plaintiff against Defendants in an amount to be determined at trial, plus punitive damages believed to exceed $3,000,000.

7

D.     On Plaintiff's Fifth Claim for Relief, disgorgement to TPG and Plaintiff of monies by which Defendants have been unjustly enriched.

E.     Such other and further relief as this Court deems just and proper.

Dated: New York, New York
          October 31, 2007

                              Yours, etc.,

                              JUDD BURSTEIN, P.C.

                    By: _____
                              Judd Burstein (JB-9585)
                              1790 Broadway, Suite 1501
                              New York, New York 10019
                              (212) 974-2400
                              *Attorneys for Plaintiff*