CASE NO.  13 180 Y 01856 07

| | | |
|---|---|---|
| SUSAN TEEMAN, | ) | |
| | ) | AMERICAN ARBITRATION |
| Claimant, | ) | ASSOCIATION |
| | ) | |
| v. | ) | |
| | ) | |
| MARYBETH GILMARTIN and | ) | |
| TEEMAN PERLEY GILMARTIN, INC., | ) | |
| | ) | |
| Respondents. | ) | OCTOBER 22, 2007 |

## RESPONDENTS' ANSWER AND AFFIRMATIVE DEFENSES AND STATEMENT OF COUNTERCLAIMS

The Respondents in the above matter, MARYBETH GILMARTIN ("MBG") AND TEEMAN PERLEY GILMARTIN, INC. ("TPG"), respectfully respond to the Statement of Claim of the Claimant, SUSAN TEEMAN ("SST"), as follows:

## I.    BY WAY OF ANSWER TO STATEMENT OF CLAIM

1.    MBG denies the allegations in Paragraph 1.

2.    MBG denies the allegations in Paragraph 2.

3.    TPG denies the allegations in Paragraph 3.

4.    MBG and TPG deny that there has been has been no 'triggering event" under the parties' agreement.

## II.    BY WAY OF AFFIRMATIVE DEFENSES

## AS AND FOR A FIRST AFFIRMATIVE DEFENSE

Respondents have paid Claimant all sums due and owing pursuant to the Agreement.

## AS AND FOR A SECOND AFFIRMATIVE DEFENSE

Claimant has failed to satisfy conditions precedent to the prosecution of this action and, therefore, is not entitled to maintain this action.

1

## AS AND FOR A THIRD AFFIRMATIVE DEFENSE (Breach of Contract)

Claimant breached the Agreement in one or more of the following ways:

    (a)     She failed to resign as an officer despite suffering from a disability;

    (b)     She failed to resign as a director despite suffering from a disability;

    (c)     She failed to generate production;

    (d)     She failed to accept tender for her shares despite the occurrence of a "triggering event" under the Agreement;

    (e)     She failed to close a transaction involving the transfer of her shares within 90 days of a "triggering event" under the Agreement;

    (f)     She failed to fulfill her responsibilities as an employee under the Agreement;

    (g)     She failed to fulfill her responsibilities as an officer under the Agreement;

    (h)     She failed to fulfill her responsibilities as a director under the Agreement;

    (i)     She has failed to recognize MBG's irrevocable power of attorney under the Agreement;

    (j)     She has failed to acknowledge that she is suffering from "a disability" under the Agreement;

    (k)     She has failed to acknowledge that a "triggering event" has occurred under the Agreement;

    (l)     She is seeking a loan repayment without agreeing to sell her stock;

    (m)     She has disclosed confidential matters to third parties in violation of Article VI;

    (n)     She has disclosed trade secrets to third parties in violation of Article VI;

(o)     She is in breach of the non-solicitation clause contained in Article VII of the Agreement;

(p)     She has performed services with competitors in violation of Article VI;

(q)     By not issuing stock certificates to MBG;

(r)     She is attempting to recover purported past compensation for the time she was disabled and/or claiming disability benefits prior to the Shareholder's Agreement;

(s)     She has conspired with Deidre Kiniry to interfere with TPG's business;

(t)     She failed to prevent an employee she hired from embezzling money from the company;

(u)     She unilaterally altered and/or modified the Shareholder's Agreement to change purported past compensation owed by TPG from $350,000 to $800,000;

(v)     She failed to generate revenues;

(w)     She inflated receivables to lenders;

(x)     She forged documents;

(y)     She has committed insurance fraud;

(z)     She has given discounts to customers without authority;

(aa)     She has inflated billings;

(bb)     She procured and signed an onerous, above-market Lease Agreement;

(cc)     She is committing prescription fraud;

(dd)     She has forged MBG's signature on the Lease;

(ee)     She gave a power of attorney to a direct competitor of TPG, Deidre Kiniry; and

(ff)     She failed to pay MBG commissions on production.

As a result of the breach of the Agreement by Claimant, the Respondents have suffered money damages.

Since Claimant breached the Agreement, she is not entitled to any recovery from the Respondents.

## AS AND FOR A FOURTH AFFIRMATIVE DEFENSE TO ALL CLAIMS (Equitable Estoppel)

Claimant has made numerous representations that she has been suffering from "a disability" under the Agreement.

In reliance on said representations, the Respondents aided Claimant in receiving disability benefits.

Despite Claimant's representations and actions, she has failed to acknowledge she is suffering from "a disability" under the Agreement.

Claimant should be equitably estopped from recovering any monies from the Respondents.

## AS AND FOR A FIFTH AFFIRMATIVE DEFENSE

Claimant failed to comply with her obligations under the Agreement, and, therefore, Claimant has waived her claims against the Respondents.

## AS AND FOR A SIXTH AFFIRMATIVE DEFENSE

The Claimant's breach of contract claims are unenforceable due to Claimant's fraud in the inducement and/or unauthorized material alteration of the Agreement.

## AS AND FOR A SEVENTH AFFIRMATIVE DEFENSE

Any injuries or damages sustained by the Claimant were occasioned through the culpable conduct and/or negligence of the Claimant.

## AS AND FOR A EIGHTH AFFIRMATIVE DEFENSE

The Claimant fails to state a cause of action upon which relief may be granted.

## AS AND FOR A NINTH AFFIRMATIVE DEFENSE

The Claimant's action is barred by the doctrine of accord and satisfaction.

## AS AND FOR A TENTH AFFIRMATIVE DEFENSE

The Claimant's action is barred by the doctrine of unclean hands.

## AS AND FOR A ELEVENTH AFFIRMATIVE DEFENSE

The Shareholder's Agreement violates public policy.

## AS AND FOR A TWELFTH AFFIRMATIVE DEFENSE

The Shareholder's Agreement is illegal.

## AS AND FOR A THIRTEENTH AFFIRMATIVE DEFENSE

The Claimant's action is barred by the statute of limitations.

## AS AND FOR A FOURTEENTH AFFIRMATIVE DEFENSE

The Claimant is estopped from claiming she is not suffering from a disability.

## AS AND FOR A FIFTEENTH AFFIRMATIVE DEFENSE

The Claimant is estopped from claiming any financial improprieties on the part of Respondents.

## AS AND FOR A SIXTEENTH AFFIRMATIVE DEFENSE

The Claimant has committed fraud.

## AS AND FOR A SEVENTEENTH AFFIRMATIVE DEFENSE

The Claimant's action is barred by the doctrine of payment.

## AS AND FOR A EIGHTEENTH AFFIRMATIVE DEFENSE

The Claimant's action is barred by the doctrine of release.

**AS AND FOR A NINETEENTH AFFIRMATIVE DEFENSE**

The Claimant has failed to mitigate damages.

**AS AND FOR A TWENTIETH AFFIRMATIVE DEFENSE**

The Claimant's action is barred by Claimant's non-compliance with statute.

**AS AND FOR A TWENTY-FIRST AFFIRMATIVE DEFENSE**

The Claimant's action is barred by the doctrine of ratification.

**AS AND FOR A TWENTY-SECOND AFFIRMATIVE DEFENSE**

The facts justify reformation of contract.

**AS AND FOR A TWENTY-THIRD AFFIRMATIVE DEFENSE**

The Claimant's action is barred by the doctrine of justification.

**AS AND FOR A TWENTY-FOURTH AFFIRMATIVE DEFENSE**

The Claimant's action is barred by the doctrine of performance.

**AS AND FOR A TWENTY-FIFTH AFFIRMATIVE DEFENSE**

The Claimant's action is barred by the doctrine of satisfaction.

**AS AND FOR A TWENTY-SIXTH AFFIRMATIVE DEFENSE**

The subject Agreement is unconscionable.

**AS AND FOR A TWENTY-SEVENTH AFFIRMATIVE DEFENSE**

The subject Agreement was obtained through duress.

**AS AND FOR A TWENTY-EIGHTH AFFIRMATIVE DEFENSE**

The subject Agreement is ambiguous.

**AS AND FOR A TWENTY-NINTH AFFIRMATIVE DEFENSE**

The Respondents are entitled to a set-off, including, but not limited to a set-off for any

recovery she may have in her personal injury tort case.

## AS AND FOR A THIRTIETH AFFIRMATIVE DEFENSE

The Claimant lacks capacity to sue.

## AS AND FOR A THIRTY-FIRST AFFIRMATIVE DEFENSE

The Claimant lacks authorization to sue.

## AS AND FOR A THIRTY-SECOND AFFIRMATIVE DEFENSE

The Claimant's action is barred by the statute of frauds.

## AS AND FOR A THIRTY-THIRD AFFIRMATIVE DEFENSE

The Claimant's action is barred by the doctrine of condonation.

## AS AND FOR A THIRTY-FOURTH AFFIRMATIVE DEFENSE

There is a lack of consideration.

## AS AND FOR A THIRTY-FIFTH AFFIRMATIVE DEFENSE

The Claimant was an at-will employee and could be terminated for any non-discriminatory reason.

## AS AND FOR A THIRTY-SIXTH AFFIRMATIVE DEFENSE

There is an adequate remedy at law.

## AS AND FOR A THIRTY-SEVENTH AFFIRMATIVE DEFENSE

Claimant's damages have been proximately caused by the culpable conduct of third parties.

## AS AND FOR A THIRTY-EIGHTH AFFIRMATIVE DEFENSE

The subject Agreement has been altered or modified without the written consent of MBG.

## AS AND FOR A THIRTY-EIGHTH AFFIRMATIVE DEFENSE

MBG is not personally liable for corporate debts.

## STATEMENT OF COUNTERCLAIM OF MARYBETH GILMARTIN AND/OR TPG

### FIRST COUNTERCLAIM (Breach of Contract)

1.      On or about July 6, 1992, the Respondent commenced employment with TPG's predecessor, Teeman and Perley.

2.      On or about January 12, 2001, SST filed an Amended Certificate of Incorporation changing the corporate name to Teeman, Perley, Gilmartin. At this juncture, MBG was held out to the public as an officer and shareholder of TPG.

3.      In or around January 1, 2004, the Respondent, MBG, entered into a Shareholder's Agreement (the "Agreement") with SST, backdated to January 1, 2003. MBG was never issued any stock certificates. At the time the Agreement was consummated, SST did not disclose, and actively concealed, that she suffered from a disability and that she had previously made a disability claim. A copy of said Agreement is attached hereto as Exhibit A and made a part hereof.

4.      At all relevant times herein, in the context of her employment, and as shareholder, officer and director, MBG was responsible for managing virtually all of the client accounts, handling the day-to-day operations of the business and marketing for new business. From the time MBG became a named partner, MBG carried the company and SST contributed virtually nothing. Instead, SST continually, and to this date, held herself out as suffering from a disability. SST has continually held herself out as disabled, made disability claims, and collected disability benefits, while simultaneously receiving compensation from TPG, and hiding the extent of such compensation from her disability carriers, and her adversaries in an unrelated tort case. (She also concealed her disability, disability claims, and disability recoveries from her adversaries in said tort case, fraudulently claiming that all her injuries stem from the accident involved therein).

8

5.      Claimant has breached the Agreement in one or more of the following ways:

(a)      In that she failed to resign as an officer despite suffering from a disability;

(b)      In that she failed to resign as a director despite suffering from a disability;

(c)      In that she failed to generate production;

(d)      In that she failed to accept tender for her shares despite the occurrence of a "triggering event" under the Agreement;

(e)      In that she failed to close a transaction involving the transfer of her shares within 90 days of a "triggering event" under the Agreement;

(f)      In that she failed to fulfill her responsibilities as an employee under the Agreement;

(g)      In that she failed to fulfill her responsibilities as an officer under the Agreement;

(h)      In that she failed to fulfill her responsibilities as a director under the Agreement;

(i)      In that she has failed to recognize MBG's irrevocable power of attorney under the Agreement;

(j)      In that she has failed to acknowledge that she is suffering from "a disability" under the Agreement;

(k)      In that she has failed to acknowledge that a "triggering event" has occurred under the Agreement;

(l)      In that she is seeking a loan repayment without agreeing to sell her stock;

(m)      In that she has disclosed confidential matters to third parties in violation of Article VI;

(n)    In that she has disclosed trade secrets to third parties in violation of Article VI;

(o)    In that she is in breach of the non-solicitation clause contained in Article VII of the Agreement;

(p)    In that she has performed services with competitors in violation of Article VI;

(q)    By not issuing stock certificates to MBG;

(r)    In that she is attempting to recover purported past compensation for the time she was disabled and/or claiming disability benefits prior to the Shareholder's Agreement;

(s)    In that she has conspired with Deidre Kiniry to interfere with TPG's business;

(t)    In that she failed to prevent an employee she hired from embezzling money from the company;

(u)    In that she unilaterally altered and/or modified the Shareholder's Agreement to change purported past compensation owed by TPG from $350,000 to $800,000;

(v)    In that she failed to generate revenues;

(w)    In that she inflated receivables to lenders;

(x)    In that she forged documents;

(y)    In that she has committed insurance fraud;

(z)    In that she has given discounts to customers without authority;

(aa)   In that she has inflated billings;

(bb)   In that she procured and signed an onerous, above-market Lease Agreement;

(cc)    In that she is committing prescription fraud;

(dd)    In that she has forged MBG's signature on a letter of credit;

(ee)    In that she gave a power of attorney to a direct competitor of TPG, Deidre Kiniry; and

(ff)    She failed to pay MBG commissions on production.

6.    As a direct and proximate result of Claimant's breach of the Agreement, Respondents have suffered money damages.

## SECOND COUNTERCLAIM (Promissory Estoppel)

7.    Respondents repeat and restate Paragraphs 1 through 6 of the Complaint as Paragraph 7 of this Second Counterclaim as if fully set forth herein.

8.    From 2004 to the present, SST continually represented that she suffered from "a disability" under the Agreement. In reliance upon that representation, TPG did not pay Claimant her salary and/or other consideration, in order to facilitate her disability claims.

9.    Despite her representations and in reliance upon those representations, Claimant is now attempting to claim she is not suffering from "a disability".

10.    Claimant should be estopped from disavowing her representations.

## THIRD COUNTERCLAIM (Quantum Meruit/Unjust Enrichment)

11.    Respondents repeat and restate Paragraphs 1 through 10 of the Complaint as Paragraph 11 of this Third Counterclaim as if fully set forth herein.

12.    From 2001 – 2004, MBG was held out as a principal and shareholder but was not compensated in accordance for same.

13.    In addition, from 2004-2007, as an employee, MBG has not been adequately compensated for her production generation.

11

14.    MBG claims damages and/or a set-off.

**FOURTH COUNTERCLAIM (Reckless and/or Intentional Misconduct)**

15.    Respondents repeat and restate Paragraphs 1 through 14 of the Complaint as Paragraph 15 of this Fourth Counterclaim as if fully set forth herein.

16.    At all times relevant hereto, SST engaged in reckless and/or intentional misconduct while purportedly employed by TPG, and while purportedly an officer and director of TPG, to wit:

(a)    Abusing cocaine while on the job;

(b)    Using cocaine in plain view in the office;

(c)    Having drug dealers come to the office;

(d)    Engaging in electronic mail correspondence with Deidre Kiniry regarding mutual cocaine use;

(e)    Violating immigration laws;

(f)    Engaging in prescription fraud and abuse relative to Oxycontin and other prescription drugs;

(g)    Formulating and implementing the tax treatment employed by TPG;

(h)    Charging TPG for non-business related expenses;

(i)    Charging her disability carriers for drug-related expenses;

(j)    Inflating the company's receivables;

(k)    Hiding her income from her disability carriers;

(l)    Hiding her disability claims in the context of a personal injury lawsuit; and

(m)    Making inconsistent claims in her personal injury lawsuit, disability claims and this arbitration.

(n)    She has disclosed trade secrets to third parties in violation of Article VI;

(o)     She is in breach of the non-solicitation clause contained in Article VII of the Agreement;

(p)     She has performed services with competitors in violation of Article VI;

(q)     By not issuing stock certificates to MBG;

(r)     She is attempting to recover purported past compensation for the time she was disabled and/or claiming disability benefits prior to the Shareholder's Agreement;

(s)     She has conspired with Deidre Kiniry to interfere with TPG's business;

(t)     She failed to prevent an employee she hired from embezzling money from the company;

(u)     She unilaterally altered and/or modified the Shareholder's Agreement to change purported past compensation owed by TPG from $350,000 to $800,000;

(v)     She failed to generate revenues;

(w)     She inflated receivables to lenders;

(x)     She forged documents;

(y)     She has committed insurance fraud;

(z)     She has given discounts to customers without authority;

(aa)     She has inflated billings;

(bb)     She procured and signed an onerous, above-market Lease Agreement;

(cc)     She is committing prescription fraud;

(dd)     She has forged MBG's signature on the Lease; and

(ee)     She gave a power of attorney to a direct competitor of TPG, Deidre Kiniry; and

(ff)     She failed to pay MBG commissions on production.

As a consequence of Claimant's reckless and/or intentional misconduct, Respondents

have sustained monetary damages.

## FIFTH COUNTERCLAIM (Breach of the Employment Obligations)

17.     Respondents repeat and restate Paragraphs 1 through 16 of the Complaint as Paragraph 17 of this Fifth Counterclaim as if fully set forth herein.

18.     As a consequence of Claimant's breach of her employment obligations, Respondents have sustained monetary damages.

19.     As a consequence of Claimant's reckless and/or intentional misconduct, Respondents have sustained monetary damages.

## SIXTH COUNTERCLAIM (Breach of Fiduciary Duty)

20.     Respondents repeat and restate Paragraphs 1 through 19 of the Complaint as Paragraph 20 of this Sixth Counterclaim as if fully set forth herein.

21.     Claimant owed fiduciary duties to Respondents.

22.     As a consequence of SST's breach of fiduciary duties, Respondents have sustained monetary damages, including loss of profits and the loss of business opportunities. The result has been a significant diminution in the value of the firm.

## SEVENTH COUNTERCLAIM (Tortious Interference With Prospective Economic Advantage)

23.     Respondents repeat and restate Paragraphs 1 through 22 of the Complaint as Paragraph 23 of this Seventh Counterclaim as if fully set forth herein.

24.     As a consequence of SST's tortious interference, Respondents have sustained monetary damages.

**EIGHTH COUNTERCLAIM (Breach of the Implied Covenant of Good Faith and Fair Dealing)**

25.     Respondents repeat and restate Paragraphs 1 through 24 of the Complaint as Paragraph 25 of this Eighth Counterclaim as if fully set forth herein.

26.     By virtue of her wrongful conduct, SST has breached the implied covenant of good faith and fair dealing to the harm and detriment of Respondents, causing them monetary damages.

**NINTH COUNTERCLAIM (Fraudulent misrepresentation)**

27.     Respondents repeat and restate Paragraphs 1 through 26 of the Complaint as Paragraph 27 of this Ninth Counterclaim as if fully set forth herein.

28.     Claimant made false representations in connection with the negotiation, execution and treatment of the Agreement.

29.     The aforementioned representations were known by SST to be untrue and/or were made in careless disregard of the truth and without any effort on SST to verify their accuracy or were made to mislead.

30.     The aforementioned representations were made to induce MBG to enter into the Agreement, or otherwise forbear from taking action.

31.     MBG and TPG justifiably relied on the aforementioned false representations to their detriment.

32.     It was reasonable for MBG and TPG to rely on SST's misrepresentations.

33.     Had MBG known the true facts prior to executing the Agreement, MBG would not have executed said Agreement.

34.     MBG and TPG have suffered and will continue to suffer an ascertainable loss of money as a result of SST's aforementioned false representations.

35.    By virtue of her wrongful conduct, Respondents have suffered monetary damages.

**TENTH COUNTERCLAIM (Negligent Misrepresentation)**

36.    Respondents repeat and restate Paragraphs 1 through 35 of the Complaint as Paragraph 36 of this Tenth Counterclaim as if fully set forth herein.

37.    The aforementioned misrepresentations were negligent as SST failed to exercise reasonable care or competence in obtaining, verifying and/or communicating the information to MBG and TPG.

38.    MBG and TPG justifiably relied on the representations made by SST and were damaged thereby.

**ELEVENTH COUNTERCLAIM (Violation of Connecticut General Statutes § 42-110a, et seq.)**

39.    Respondents repeat and restate Paragraphs 1 through 38 of the Complaint as Paragraph 39 of this Eleventh Counterclaim as if fully set forth herein.

40.    SST's activities in connection with TPG and Deidre Kiniry constitute trade and/or commerce within the meaning of the Connecticut Unfair Trade Practices Act ("CUTPA"), Connecticut General Statutes Section 42-110a(4).

41.    The aforementioned actions of SST constitute unfair and/or deceptive acts or practices in the conduct of trade or commerce in violation of CUTPA, General Statutes Section 42-110b(a).

42.    As a direct and proximate result of SST's aforementioned actions, MBG and TPG have suffered an ascertainable loss of money and/or property..

43.    Pursuant to General Statutes Section 42-110g(c), MBG and TPG have mailed a copy of this Complaint to the Attorney General and the Commissioner of Consumer Protection.

**TWELFTH COUNTERCLAIM (Reformation of Contract)**

44.     Respondents repeat and restate Paragraphs 1 through 43 of the Complaint as Paragraph 44 of this Twelfth Counterclaim as if fully set forth herein.

45.     The subject Agreement should be reformed and the equities of the parties be adjusted.

46.     There is no adequate remedy at law.

**THIRTEENTH COUNTERCLAIM (Recission)**

47.     Respondents repeat and restate Paragraphs 1 through 46 of the Complainant as Paragraph 47 of this Thirteenth Counterclaim as if fully set forth herein.

48.     The subject Agreement should be rescinded.

49.     There is no adequate remedy at law.

**FOURTEENTH COUNTERCLAIM (Usurpation of Corporate Opportunities)**

50.     Respondents repeat and restate Paragraphs 1 through 49 of the Complaint as Paragraph 50 of this Fourteenth Counterclaim as if fully set forth herein.

51.     Respondents have suffered monetary damages.

**FIFTEENTH COUNTERCLAIM (Action to Recover Commissions)**

52.     Respondents repeat and restate Paragraphs 1 through 51 of the Complaint as Paragraph 52 of this Fifteenth Counterclaim as if fully set forth herein.

53.     MBG has suffered monetary damages.

**SIXTEENTH COUNTERCLAIM (Action to Recover Money Lent)**

54.     Respondents repeat and restate Paragraphs 1 through 53 of the Complaint as Paragraph 54 of this Sixteenth Counterclaim as if fully set forth herein.

55.     MBG has suffered monetary damages.

## SEVENTEENTH COUNTERCLAIM ( Declaratory Judgment – Terminated Under the Agreement)

56.     Respondents repeat and restate Paragraphs 1 through 55 of the Complaint as Paragraph 56 of this Seventeenth Counterclaim as if fully set forth herein.

57.     Respondents request that the arbitrator declare that SST was properly terminated under the Agreement on grounds set forth in the Agreement.

## EIGHTEENTH COUNTERCLAIM ( Declaratory Judgment – Terminated on other Grounds)

58.     Respondents repeat and restate Paragraphs 1 through 57 of the Complaint as Paragraph 57 of this Eighteenth Counterclaim as if fully set forth herein.

59.     Respondents request that the arbitrator declare that SST was properly terminated under the Agreement on grounds other than those specifically set forth in the Agreement.

## NINETEENTH COUNTERCLAIM ( Declaratory Judgment – At Will Employee)

60.     Respondents repeat and restate Paragraphs 1 through 59 of the Complaint as Paragraph 60 of this Nineteenth Counterclaim as if fully set forth herein.

61.     Respondents request that the arbitrator declare that SST was properly terminated as an at-will employee.

## TWENTIETH COUNTERCLAIM ( Declaratory Judgment – Illegal Agreement)

62.     Respondents repeat and restate Paragraphs 1 through 61 of the Complaint as Paragraph 62 of this Twentieth Counterclaim as if fully set forth herein.

63.     Respondents request that the arbitrator declare that the subject Agreement was illegal or otherwise void as against public policy.

## TWENTY-FIRST COUNTERCLAIM (Fraud)

64.    Respondents repeat and restate Paragraphs 1 through 63 of the Complaint as Paragraph 64 of this Twenty-First Counterclaim as if fully set forth herein.

65.    Respondents have suffered money damages.

## TWENTY-SECOND COUNTERCLAIM (Undue Influence)

66.    Respondents repeat and restate Paragraphs 1 through 65 of the Complaint as Paragraph 66 of this Twenty-Second Counterclaim as if fully set forth herein.

67.    Respondents have suffered money damages.

## TWENTY-THIRD COUNTERCLAIM (Breach of Trust)

68.    Respondents repeat and restate Paragraphs 1 through 67 of the Complaint as Paragraph 68 of this Twenty-Third Counterclaim as if fully set forth herein.

69.    Respondents have suffered money damages.

## TWENTY-FOURTH COUNTERCLAIM (Gross Negligence)

70.    Respondents repeat and restate Paragraphs 1 through 69 of the Complaint as Paragraph 69 of this Twenty-Fourth Counterclaim as if fully set forth herein.

71.    Respondents have suffered money damages.

## TWENTY-FIFTH COUNTERCLAIM (Conversion)

72.    Respondents repeat and restate Paragraphs 1 through 71 of the Complaint as Paragraph 71 of this Twenty-Fifth Counterclaim as if fully set forth herein.

73.    Respondents have suffered money damages.

## TWENTY-SIXTH COUNTERCLAIM (Tortious Interference with Contract)

74.    Respondents repeat and restate Paragraphs 1 through 73 of the Complaint as Paragraph 74 of this Twenty-Sixth Counterclaim as if fully set forth herein.

75.    Respondents have suffered money damages.

## TWENTY-SEVENTH COUNTERCLAIM (Tortious Interference with Business Relations)

76.    Respondents repeat and restate Paragraphs 1 through 75 of the Complaint as Paragraph 76 of this Twenty-Seventh Counterclaim as if fully set forth herein.

77.    Respondents have suffered money damages.

## TWENTY-EIGHTH COUNTERCLAIM (Tortious Interference with Expectancies)

78.    Respondents repeat and restate Paragraphs 1 through 77 of the Complaint as Paragraph 78 of this Twenty-Eighth Counterclaim as if fully set forth herein.

79.    Respondents have suffered money damages.

## TWENTY-NINTH COUNTERCLAIM (Civil Conspiracy)

80.    Respondents repeat and restate Paragraphs 1 through 79 of the Complaint as Paragraph 80 of this Twenty-Ninth Counterclaim as if fully set forth herein.

81.    Respondents have suffered money damages.

## THIRTIETH COUNTERCLAIM (Uniform Trade Secrets Act)

82.    Respondents repeat and restate Paragraphs 1 through 81 of the Complaint as Paragraph 82 of this Thirtieth Counterclaim as if fully set forth herein.

83.    Respondents have suffered money damages.

## THIRTY-FIRST COUNTERCLAIM (Indemnification)

84.    Respondents repeat and restate Paragraphs 1 through 83 of the Complaint as Paragraph 83 of this Thirty-First Counterclaim as if fully set forth herein.

84.    Under the Agreement, MBG is entitled to contractual indemnification.

## THIRTY-SECOND COUNTERCLAIM (Specific Performance)

85.    Respondents repeat and restate Paragraphs 1 through 84 of the Complaint as Paragraph 84 of this Thirty-Second Counterclaim as if fully set forth herein.

86.    Claimant should be required to specifically perform the above-mentioned Agreement.

**WHEREFORE,** the Respondents respectfully request that the arbitrator dismiss the Claimant's Complaint and demands judgment on Respondents' Counterclaims, including attorneys' fees and punitive damages where appropriate, together with costs and disbursements, and such other relief as is just and equitable.

Dated: October 22, 2007
      Stamford, CT

                           THE RESPONDENTS/COUNTERCLAIMANTS

                        BY:   _____
                             Jonathan P. Whitcomb
                             DISERIO MARTIN O'CONNOR
                                 & CASTIGLIONI LLP
                             One Atlantic Street
                             Stamford, CT 06901
                             Phone: (203) 358-0800
                             Fax:  (203) 348-2321

                             jwhitcomb@dmoc.com

## **CERTIFICATION**

I hereby certify that a true copy of the foregoing was mailed on October 22, 2007, to all

counsel and pro se parties of record:

Judd Burstein
Judd Burstein PC
1790 Broadway
New York, NY 10019

_____
Jonathan P. Whitcomb

H:\LIT\JPW\25207.Answer Affirmative Defenses & Statement of Counterclaims.doc

# EXHIBIT A

## SHAREHOLDERS' AGREEMENT

AGREEMENT, made as of the 1st day of January, 2003, by and among SUSAN TEEMAN ("TEEMAN"), residing at 910 Fifth Avenue, Apt. 3B, New York, New York 10021; MARYBETH GILMARTIN ("GILMARTIN"), residing at 237 Lake Avenue, Greenwich, Connecticut 06830 (TEEMAN and GILMARTIN are collectively the "SHAREHOLDERS" and individually each is a "SHAREHOLDER"); and TEEMAN PERLEY GILMARTIN INC. ("CORPORATION"), a New York corporation with an office at 230 Park Avenue, Suite 2425, New York, New York 10169.

## WITNESSETH:

WHEREAS, the SHAREHOLDERS are the owners of all of the issued and outstanding shares of capital stock of the CORPORATION (shares of the CORPORATION's capital stock issued and outstanding from time to time, the "Stock");

WHEREAS, it is the desire of the parties to make certain agreements regarding management of the CORPORATION, the restrictions and terms relating to the sale of Stock and certain other matters, all on the terms and conditions hereinafter set forth;

NOW, THEREFORE, in consideration of the mutual covenants and premises hereinafter set forth, the parties hereto hereby covenant and agree as follows:

## ARTICLE I
## DEFINITIONS

Capitalized terms and phrases used in this Agreement and not otherwise defined in this Agreement shall have the respective meanings set forth on Exhibit A to this Agreement which is hereby incorporated into and forms a part of this Agreement.

## ARTICLE II
## MANAGEMENT AND CERTAIN AGREEMENTS REGARDING THE CONDUCT OF BUSINESS

2.1.  Management.

(a)     Subject to the balance of this Section 2.1(a), the Board of Directors of the CORPORATION shall be composed of two persons, consisting of the SHAREHOLDERS for as long as both are shareholders of the CORPORATION.  Subject to the balance of this Section 2.1(a), each of the SHAREHOLDERS hereby agrees to vote all of her shares of Stock from time to time for the election of the SHAREHOLDERS (for as long as both are shareholders of the CORPORATION) as the sole directors of the CORPORATION.  If either SHAREHOLDER is no longer a shareholder of the CORPORATION, she shall immediately resign as a director.  Notwithstanding the foregoing, if any SHAREHOLDER is a shareholder of the CORPORATION and suffers a Disability which makes her incapable of serving as a director of the CORPORATION, the incapable SHAREHOLDER shall cease serving as such and she shall immediately resign as a director of the CORPORATION and each of the SHAREHOLDERS shall thereafter vote all of her shares of Stock from time to time for the election of the capable, non-disabled director as the sole director of the CORPORATION in any such case.  If either SHAREHOLDER refuses to so or fails to so resign when required by this Section 2.1(a), she hereby grants the other SHAREHOLDER an irrevocable power of attorney, which is coupled with an interest, to execute and deliver said resignation in a form satisfactory to the remaining shareholder.

(b)     For as long as she is a shareholder of the CORPORATION, TEEMAN shall be appointed to hold the offices of the CORPORATION of President and Secretary until her successor is

duly appointed by the Board of Directors pursuant to the By-Laws or until her earlier death, resignation or removal. For as long as she is a SHAREHOLDER of the CORPORATION, GILMARTIN shall be appointed to hold the office of the CORPORATION of Vice President until her successor is duly appointed by the Board of Directors pursuant to the By-Laws or until her earlier death, resignation or removal. If either SHAREHOLDER is no longer a shareholder of the CORPORATION, she shall immediately resign as an officer of the CORPORATION. Notwithstanding the foregoing, if any SHAREHOLDER is a shareholder of the CORPORATION and suffers a Disability which makes her incapable of serving as an officer of the CORPORATION, the incapable SHAREHOLDER shall immediately resign as an officer of the CORPORATION and thereafter the capable SHAREHOLDER shall serve as the sole officer of the CORPORATION and hold the office of President, Secretary and Vice President. If either SHAREHOLDER refuses to so or fails to so resign, she hereby grants the other SHAREHOLDER an irrevocable power of attorney, which is coupled with an interest, to execute and deliver said resignation in a form satisfactory to the remaining shareholder. All of the foregoing officers shall have the respective duties and responsibilities as set forth in the By-Laws or prescribed by the Board of Directors of the CORPORATION from time to time.

(c)    The By-Laws shall contain such provisions as shall be consistent with and permit the effectuation of the provisions of this Section 2.1. The parties hereto agree to take all such action as may be required from time to time to adopt or amend the By-Laws accordingly. The parties agree to take all further action under applicable law (including, without limitation, calling of special meetings of the directors or the shareholders, as the case may be) for purposes of electing, as promptly as practicable, and maintaining in office, the persons designated to serve as directors pursuant to this Section 2.1 and otherwise effectuating the provisions of this Section 2.1.

2.2.    <u>Shareholder Distributions and Compensation.</u>

(a)    During each calendar year that both SHAREHOLDERS are shareholders of the CORPORATION, the Aggregate Compensation of TEEMAN and GILMARTIN from the CORPORATION shall be equal, except that TEEMAN shall be paid an additional aggregate amount of $350,000 owed to her for past compensation which additional aggregate amount shall be paid to her as cash becomes available. *800,000*

(b)    Subject to the proviso in Section 2.2, to the extent either SHAREHOLDER has suffered a Disability, such SHAREHOLDER, during such period, shall receive 100% of the Aggregate Compensation of the non-disabled SHAREHOLDER during such period; provided, however, that if the above payment in this sentence, together with any proceeds of disability income insurance on such disabled SHAREHOLDER's life received by such disabled SHAREHOLDER during such period, exceeds the Aggregate Compensation during such period of the non-disabled SHAREHOLDER, then such disabled SHAREHOLDER's payment from the CORPORATION during such period shall be reduced so the sum of such payment and the amount paid to her under such disability insurance policy during such period does not exceed the Aggregate Compensation of the non-disabled SHAREHOLDER.

ARTICLE III
CERTAIN AGREEMENTS RELATING TO THE STOCK

3.1.    <u>Access to Information.</u> Each of the SHAREHOLDERS hereby agrees that she is intimately knowledgeable with the business operations of the CORPORATION. Each of the SHAREHOLDERS hereby agrees that she and her professional advisors have been granted the opportunity to conduct a full and fair examination of the records, documents and files of the CORPORATION, to ask questions of and receive answers from representatives of the CORPORATION concerning the terms and conditions of this Agreement and the Stock transferred to or owned by her.

3.2.    Investment.

(a)    Each of the SHAREHOLDERS hereby agrees and understands that she has acquired the Stock for investment purposes only and not for sale or with a view to distribution of all or any part of such Stock.

(b)    Each of the SHAREHOLDERS hereby agrees and understands that the Stock she has received and may receive in the future has not been and will not be registered under the Securities Act of 1933 (the "1933 Act"), or under the securities laws of any U.S., state or other jurisdiction, and has been or will be received by her pursuant to a specified exemption from the registration provisions thereunder.

(c)    Each of the SHAREHOLDERS hereby agrees and acknowledges that the Stock that she has received and that she may in the future receive must be held indefinitely unless such Stock is subsequently registered under the 1933 Act and under applicable state securities laws or an exemption from such registration is available and unless a transfer is made in accordance with the terms of this Agreement.

(d)    Each of the SHAREHOLDERS hereby agrees that she is aware that no federal or state or other agency has passed upon or made any finding or determination concerning the fairness of the transactions contemplated by this Agreement or any of the related agreements and instruments or the adequacy of any disclosure made to such SHAREHOLDER.

ARTICLE IV
OWNERSHIP OF STOCK BY SHAREHOLDERS

Each of TEEMAN and GILMARTIN owns 100 shares of the CORPORATION's Stock.

ARTICLE V
VOLUNTARY AND INVOLUNTARY LIFETIME TRANSFERS

5.1.    Transfer of Stock.    During the term of this Agreement, neither SHAREHOLDER shall, directly or indirectly, sell, assign, hypothecate, transfer, pledge, encumber, give, place in trust, or otherwise voluntarily or involuntarily dispose of, by will or otherwise, any Stock or any portion thereof ("transfer") except as expressly and specifically permitted by this Article V of this Agreement, subject to the requirements and conditions contained in this Article V. The CORPORATION shall refuse to transfer on its books any Stock transferred by either SHAREHOLDER in violation of this Agreement.

5.2.    Restrictive Endorsement.    Each certificate representing either SHAREHOLDER's Stock shall have printed thereon the following legend:

These shares have not been registered under the Securities Act of 1933, as amended ("1933 Act") and have been acquired for investment and shall not be sold, assigned, hypothecated, transferred, pledged, encumbered, gifted, placed in trust or otherwise voluntarily or involuntarily disposed of without an effective registration statement for the shares under the 1933 Act or a valid exemption therefrom and compliance with the Shareholders' Agreement referred to below which restricts any such sale, assignment, hypothecation, transfer, pledge, encumbrance, gift, placement or disposition. The sale, assignment, hypothecation, transfer, pledge, encumbrance, gift, placement and disposition of these shares is subject to a Shareholders' Agreement dated as of January 1, 2003, as amended, modified, supplemented or restated from time to time, a signed counterpart of which is on file at the office of the CORPORATION.

5.3.  Options and/or Obligations to Purchase Stock. In the event a Triggering Event occurs with respect to either SHAREHOLDER, the other SHAREHOLDER shall purchase all Stock of the SHAREHOLDER suffering the Triggering Event for $1.

5.4.  Time and Place of Closing. The closings under this Agreement for the sale of Stock shall take place at the time and place designated by the buying SHAREHOLDER in her sole and absolute discretion but in no event shall any closing take place more than 90 days after the relevant Triggering Event.

5.5.  Transfer of Title. At the closing for any purchase of Stock, title to the Stock shall pass immediately at closing upon the making of the initial payment required under this Article V.

5.6.  Indemnification. Acceptance by any SHAREHOLDER or her estate, representatives or heirs of all or part of any consideration for a sale of her Stock shall constitute an agreement by such SHAREHOLDER to indemnify the CORPORATION and the remaining SHAREHOLDER from and against (a) the selling SHAREHOLDER's proportionate share of any and all claims or liabilities which may arise subsequent to the date of closing with respect to taxes of any kind or nature found to be due by the CORPORATION to the United States or any State or municipality for any periods prior to closing and (b) the selling SHAREHOLDER's gross negligence or intentional wrongful conduct or any claims, adverse claims, encumbrances, pledges, security interests and liens (the "Liens") on her Shares and all liabilities, damages, losses, costs and expenses, including, without limitation, attorneys' fees and expenses, caused by any such gross negligence or wrongful conduct or Liens. It is understood and agreed that the selling SHAREHOLDER's liability under Section 5.7(a) shall be limited to such proportion of such claims and liabilities as is equivalent to her Stock Percentage Interest in the CORPORATION for the applicable period prior to closing multiplied by the applicable liability (which should include a pro-ration if the sale takes place prior to the expiration of a taxable period). At closing, to the extent not previously provided, the selling SHAREHOLDER shall resign as a director and officer of the CORPORATION and represent and warrant in a separate writing to the purchaser of the Shares that they are free and clear of all Liens and that she has not acted with gross negligence or intentionally wrongfully and that she shall indemnify the buying SHAREHOLDER and the CORPORATION from her gross negligence or wrongful conduct and all Liens and all liabilities, damages, losses, costs and expenses, including, without limitation, attorney's fees and expenses, cause by any such gross negligence or wrongful conduct or Liens.

5.7.  Outstanding Loans.

(a)  In the event that either SHAREHOLDER sells her Stock pursuant to this Agreement and in the event that at the time of the closing the CORPORATION or the other SHAREHOLDER is indebted to the selling SHAREHOLDER for any loans made to the CORPORATION or the other SHAREHOLDER or other financial obligations, the CORPORATION or the other SHAREHOLDER, as applicable (whichever is liable), shall repay said indebtedness and such other obligations to the selling SHAREHOLDER with interest, if applicable (less the amount of any loans made by the CORPORATION or the other SHAREHOLDER, as applicable, to the selling SHAREHOLDER, plus interest, if applicable) at closing.

(b)  In the event either SHAREHOLDER sells or transfers her Stock pursuant to this Agreement, the other SHAREHOLDER shall use reasonable best efforts to have the selling/transferring SHAREHOLDER released from any personal guarantees of the CORPORATION's obligations. Regardless of whether any such release is obtained, upon any such sale or transfer, the selling or transferring SHAREHOLDER shall be indemnified for any and all losses, liabilities, damages and expenses, including, without limitation, attorneys' fees, resulting from or relating to such guarantees.

## ARTICLE VI
### CONFIDENTIAL INFORMATION, TRADE SECRETS, EXCLUSIVE SERVICES

So long as either SHAREHOLDER is a shareholder of the CORPORATION, except in furtherance of the CORPORATON's business, such SHAREHOLDER shall not, either directly or indirectly, on her own behalf or in the service or on behalf of others, engage in any other business, enterprise or business-related undertaking, or prepare for, undertake or discuss with any employees of the CORPORATION any other business or professional employment of any kind, whether within the personnel or staffing industries or otherwise. [Exceptions?]

So long as either SHAREHOLDER is a shareholder of the CORPORATION and thereafter, such SHAREHOLDER shall neither use, disclose, copy, retain nor remove from the CORPORATION's premises any confidential or proprietary information or trade secrets, including but not limited to lists and information pertaining to clients and client contacts, job applicants, referrals, and employees, and all other ideas, methods, procedures, techniques, written material, data, strategic or marketing plans, and other know-how, developed or used in connection with the CORPORATION's business or otherwise belonging or pertaining to the CORPORATION (collectively, as modified by the balance of this Article VI, "Confidential Information") other than in connection with and in furtherance of authorized work performed for the CORPORATION. Confidential Information shall also include but not be limited to, the names, addresses, telephone numbers, qualifications, education, accomplishments, experience, availability and resumes of all persons who have applied to or been recruited by the CORPORATION for employment, job order specifications and the particular characteristics and requirements of persons generally hired by a client, as well as specific job listings, mailing lists, computer runoffs, financial and other information of the CORPORATION, information relating to trademarks, service marks, patents, patent applications, discoveries, copyrights, and other proprietary rights, existing and potential sources, services or arrangements, commission structures, business projections and forecasts, policies and strategies, operating methods, information stored on the CORPORATION's computers or in the CORPORATION's files, the internal organization of the CORPORATION and any other matters relating to the business of the CORPORATION that are not publicly known, and any information the disclosure of which may adversely affect the financial condition, good name, reputation or image of the CORPORATION or its business. All information stored on these computers, including e-mail, word processing documents or other data, whether or not the information relates to the CORPORATION, is the property of the CORPORATION. As an employee of the CORPORATION, each SHAREHOLDER is forbidden from storing Confidential Information on personally-owned computers.

Upon termination or cessation of any SHAREHOLDER's employment and also on any date she ceases to be a shareholder of the CORPORATION, such SHAREHOLDER shall turn over to the CORPORATION all documents, papers, digital data and other material, including all copies thereof (in any form or on any medium whatsoever, including without limitation, on any computer hard drive or any personal computers), in her possession or under her control which may constitute, contain or be derived from Confidential Information, together with all documents, notes or other work product which is connected with or derived from such SHAREHOLDER's services to the CORPORATION whether or not such material is at the date thereof in such SHAREHOLDER's possession.

Neither SHAREHOLDER shall be liable for disclosing Confidential Information to the extent such disclosure is required by applicable law provided that the SHAREHOLDER required to make such disclosure notifies the other SHAREHOLDER as soon as reasonably possible after learning of such requirement and does not interfere with the other SHAREHOLDER's or the CORPORATION's attempt to prevent such disclosure.

To the extent of any direct conflict between this Article and Section 13.2, Section 13.2 shall control.

## ARTICLE VII
## NON-SOLICITATION

Each SHAREHOLDER shall not, while a shareholder of the CORPORATION and for a period of the first two (2) years commencing on the date she ceases to be a shareholder of the CORPORATION (for any reason), either directly or indirectly, on her own behalf or in the service or on behalf of others:

(a)    Solicit, divert or hire or cause to be hired, or attempt to solicit, divert, hire or cause to be hired, to or by any Competing Business, or hire or engage as an independent contractor or otherwise, any Person employed by or acting as a consultant to the CORPORATION (any such employee or consultant, a "Prohibited Employee"), at any time while such SHAREHOLDER was a shareholder or employee of the CORPORATION, or at any time during the two (2) year period after such SHAREHOLDER ceases to be a shareholder, whether such Prohibited Employee is or was employed as a temporary or permanent employee and whether or not such employment or consultancy is or was pursuant to a written agreement and whether or not such employment or consultancy is or was for a determined period or is or was at will or induce or seek to influence any Prohibited Employee to leave his/her employer (or terminate such consultancy with the CORPORATION), or to become financially interested in a business similar to that of the CORPORATION.

(b)    Solicit, divert, induce or influence, or attempt to solicit, divert, induce or influence any Person who was a client of the CORPORATION prior to either SHAREHOLDER becoming a shareholder or an employee of the CORPORATION, or any Person who was, is or will be a client of the CORPORATION while such SHAREHOLDER is a shareholder or employee of the CORPORATION, or during the two (2) year period after such SHAREHOLDER ceases to be a shareholder, or fill, or attempt to fill, a job order or assignment which was obtained and pending with the CORPORATION, at the time such SHAREHOLDER ceased being a shareholder of the CORPORATION, or encourage any such Person to terminate a relationship with the CORPORATION or transact business with a Competing Business; or

(c)    Contact, circularize or communicate with, in any manner, directly or indirectly, any of the CORPORATION's applicants for permanent employment who were such at the time such SHAREHOLDER is, was or will be a shareholder or employee of the CORPORATION or during the two (2) year period after such SHAREHOLDER ceases to be a shareholder.

Each SHAREHOLDER agrees that while she is a shareholder of the CORPORATION, that she will not, either directly or indirectly, on her own behalf or in the service or on behalf of others, engage in, be employed by, own, manage, operate, control, participate in or be connected in any manner with the ownership, management, operation or control of any Competing Business; provided, however, such SHAREHOLDER may own up to two percent (2%) of any publicly-held company where such SHAREHOLDER is a mere owner and not otherwise connected to such publicly-held company.

## ARTICLE VIII
## NON-AFFILIATION

Each SHAREHOLDER shall not, while a shareholder or employee of the CORPORATION and for a period of the first two (2) years commencing on the date she ceases to be a shareholder of the CORPORATION (for any reason), directly or indirectly, accept employment with an employer which employs any Person who was, is or will be an employee of the CORPORATION while such SHAREHOLDER was, is or will be a shareholder or employee of the CORPORATION.

## ARTICLE IX
### BREACH

(a)    In the event of a breach of any of the covenants set forth in Articles VI, VII or VIII the running of the period of the restriction shall be tolled during the continuation of any such breach, and the running of the period of such restrictions shall commence only upon compliance with the terms of the applicable Section. The CORPORATION agrees to notify such SHAREHOLDER of her breach of any covenants set forth in Articles VI, VII or VIII within fourteen (14) days of discovery of such breach by the CORPORATION, but failure to notify such SHAREHOLDER of such breach shall not be a waiver of any rights of the CORPORATION with respect thereto.

(b)    Each SHAREHOLDER agrees that each of her covenants set forth in Articles VI, VII or VIII are reasonable and necessary to protect and preserve the CORPORATION's business, interests and properties of the CORPORATION, and in the event of a breach of any of his covenants in this Agreement, the CORPORATION and each of the SHAREHOLDERS, shall be entitled to both temporary and permanent injunctions to prevent a breach or contemplated breach of any of such covenants in Articles VI, VII or VIII of this Agreement, without the necessity of proving irreparable harm or posting a bond or other security. The SHAREHOLDERS and/or the CORPORATION also retain the right to seek other relief, including damages for a breach of this Agreement.

(c)    The remedies contained herein are not exclusive, but are cumulative, and the CORPORATION and the SHAREHOLDERS may pursue any and all other relief available to any of them in equity or in law.

## ARTICLE X
### PATENTS, COPYRIGHTS

Any and all intellectual property and other proprietary rights and interests in all work products, including, without limitation, all patents, patent applications, inventions, copyrights, developments, trade secrets and process (together with all modifications and derivatives thereof, collectively "Inventions") which either SHAREHOLDER may own, produce, conceive of, create or develop while a shareholder or employee of the CORPORATION relating to the fields in which the CORPORATION may then be engaged, shall belong to and be the sole and exclusive property of the CORPORATION; and forthwith upon request of the CORPORATION, either SHAREHOLDER shall execute all such assignments and other documents and take all such other action as the CORPORATION may reasonably request in order to vest in the CORPORATION all her right, title, and interest in and to such Inventions, free and clear of all liens, charges, and encumbrances. To the extent of any direct conflict between this Article and Section 13.2, Section 13.2 shall control.

## ARTICLE XI
### EFFECTIVE DATE, TERMINATION

(a)    This Agreement shall be deemed effective as of the date first above set forth and shall terminate (except with respect to any right, option or obligation created or arising hereunder by virtue of the occurrence of any event prior to the termination of this Agreement, whether or not any such right, option or obligation shall be continued or dependent on the lapse of any period of time, the giving of any notice or the occurrence of any other event after the termination of this Agreement) on the occurrence of the earliest of: (i) agreement of the SHAREHOLDERS; (ii) the merger or consolidation of CORPORATION with or into any other CORPORATION not directly or indirectly owned or controlled by the SHAREHOLDERS; (iii) closing of an initial public offering of CORPORATION's shares of Stock; or (iv) the acquisition by either SHAREHOLDER or CORPORATION of all of the Stock owned by the other SHAREHOLDER.

(b)   Notwithstanding the provisions contained in this Agreement, upon termination of this Agreement, Articles VI, VII, VIII, IX, X, XI, XII and XIII and Exhibit A shall survive and shall remain binding on the parties to this Agreement.

## ARTICLE XII
## FURTHER DOCUMENTS, BOOKS AND RECORDS TO BE RETURNED

All books, records and accounts relating to CORPORATION's affairs, whether prepared by either SHAREHOLDER or otherwise coming into either SHAREHOLDER's possession, shall be the exclusive property of CORPORATION and shall be returned immediately to CORPORATION on termination of this Agreement or at CORPORATION's request at any time.

## ARTICLE XIII
## MISCELLANEOUS PROVISIONS

13.1.  <u>Notices.</u>  All notices, demands, requests, consents or other communications to be made, served or given pursuant to the terms hereof shall be in writing and signed by the party giving the same and shall be deemed given or made within one (1) Business Day of dispatch if transmitted by a reputable overnight courier or if delivered by hand to the intended recipient at the address as set forth in the preamble to this Agreement.  Any party may change the address to which each such notice or communication shall be sent by giving written notice to the other parties hereto of such address in accordance with this Section.

13.2.  <u>Severability.</u>  The parties hereto intend all provisions of this Agreement to be enforced to the fullest extent permitted by law.  The parties agree that each of the covenants and agreements in this Agreement is separate, distinct and severable from all of the other provisions of this Agreement; that the unenforceability of any such covenant or agreement shall not affect the validity or enforceability of any other such covenants or agreements or any other provision or provisions of this Agreement.   Should a court of competent jurisdiction determine that the scope of any provision of Articles VI through X of this Agreement is too broad to be enforced as written, the parties intend that the court should reform the provision to such narrower scope as it determines to be enforceable.  If, however, any provision of this Agreement is held to be illegal or unenforceable or by its severance, invalid or unenforceable under present or future law, and with respect to Articles VI through X not subject to reform, as set forth above, such provision shall be fully severable from this Agreement, this Agreement shall be construed and enforced as if such illegal, invalid or unenforceable provision were never a part hereof and the remaining provisions of this Agreement shall remain in full force and effect and shall not be affected by the illegal, invalid or unenforceable provision or by its severance.

13.3.  <u>Captions.</u>  The captions set forth above in this Agreement are for convenience only and shall not limit or define the text of this Agreement.

13.4.  <u>Person and Gender.</u>  Until the context clearly requires a different interpretation, the masculine gender shall include the feminine and neuter genders, and the singular shall include the plural.

13.5.  <u>Binding Agreement.</u>  This Agreement and the parties' rights and obligations may not be assigned or transferred.   Subject to the restrictions on assignment and transfer herein contained, the terms and provisions of this Agreement shall be binding upon the parties hereto and their respective successors, representatives, estates and assigns and inure to the benefit of, the successors, representatives, estates, heirs, legatees and permitted assigns of the respective SHAREHOLDERS.  No Person other than a successor, representative, estate, heir, legatee or permitted assign of the SHAREHOLDERS shall obtain any benefit or have any right to enforce any provision of this Agreement.

13.6.  Waiver of Action for Partition.  Each of the Parties irrevocably waives any right that it may have to maintain any action for partition with respect to the property of the CORPORATION.

13.7.  Non-Disparagement.  The parties hereto agree that they will not make, or cause to be made, any statements, observations or opinions, or communicate any information (whether oral or written) that disparage or are likely in any way to harm the reputation of each other except to the extent required or advisable in connection with any then pending litigation or governmental investigation.

13.8.  Applicable Law.  Notwithstanding the place where this Agreement may be executed by any of the parties hereto, the parties expressly agree that all the terms and provisions hereof shall be construed under the laws of the State of New York without giving effect to conflict of law principles.

13.9.  Entire Agreement.  This Agreement, which includes Exhibit A to this Agreement, embodies the entire agreement of the parties hereto with respect of the matters set forth herein and therein and supersedes any prior understanding or agreements oral or written with respect thereto.

13.10.  Agreement in Counterparts.  This Agreement may be executed in several counterparts and all so executed shall constitute one Agreement, binding on the parties thereto, notwithstanding that all the parties are not signatories to the original or same counterpart.

13.11.  Amendments.  This Agreement may only be amended, modified or restated by a written document signed by all parties.

13.12.  Appraisal Rights.  The SHAREHOLDERS hereby waive any appraisal, cash-out or similar rights they may have at law relating to any CORPORATION act, event or transaction, including, without limitation, any merger, sale or consolidation involving the CORPORATION.

13.13.  Waiver of Breach.  The waiver of any breach of this Agreement by any party at any time shall not be effective unless in writing, and no such waiver shall constitute the waiver of the same or another breach on a subsequent occasion.

13.14.  [Rights to Name "TEEMAN" and "GILMARTIN".  The SHAREHOLDERS agree that the names, trade names, service marks and trademarks utilized for the CORPORATION's business are and shall at all times be owned solely by the CORPORATION except that the names "TEEMAN" and "PERLEY" and all trade names, service marks or trademarks containing the formatives of TEEMAN and/or PERLEY (the "SHAREHOLDER Marks") are and shall at all times be owned by TEEMAN or PERLEY, as applicable.  Each of the SHAREHOLDERS hereby grants the CORPORATION, and the CORPORATION hereby accepts, a royalty-free, non-exclusive, non-transferable license, without right to sub-license, to use the SHAREHOLDER Marks in connection with the CORPORATION's business, for as long as the CORPORATION does business (the "Name License").  At either SHAREHOLDER's request, on terms satisfactory to the SHAREHOLDERS, the CORPORATION shall execute a more extensive license agreement with such SHAREHOLDER replacing the Name License.]

13.15.  Arbitration: Submission to Jurisdiction.  Except as set forth below, all disputes arising in connection with this Agreement shall be resolved by binding arbitration in accordance with the applicable rules of the American Arbitration Association.  The arbitration shall be held in New York, New York before a single arbitrator and shall otherwise be conducted in accordance with the American Arbitration Association Commercial Arbitration Rules.  Each of the parties hereto consents to the exclusive jurisdiction of any state or federal court located within the county of New York, State of New York in connection with any violation or alleged violation of Article VI through X of this Agreement.  Each of the parties irrevocably agrees that all actions and proceedings relating to a violation or an alleged violation of Article VI through X of this Agreement hereby shall be litigated in New York County, New York.  Each of the parties hereto waives any objection that it may have to the conduct of any action or

proceeding in any such arbitration or court based on improper venue or forum non conveniens, waives personal service of any and all process upon it, and consents that all service of process may be made by mail or courier service directed to it at the address set forth in this Agreement and that service so made shall be deemed to be completed upon the earlier of actual receipt or ten (10) days after the same shall have been posted. Nothing contained in this Section shall affect the right of any party hereto to enforce any judgment obtained by arbitration or in a New York court in any other court or serve legal process in any other manner permitted by law.

13.16.  Further Assurances.  Each of the parties shall cooperate and take such actions, and execute all such further instruments and documents, at any time, as any party may reasonably request to effect the terms and purposes of this Agreement.

13.17.  Certain Waivers.  EACH OF THE PARTIES HEREBY WAIVES, TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW, ANY RIGHT IT, HE OR SHE MAY HAVE TO A TRIAL BY JURY IN RESPECT OF ANY LITIGATION DIRECTLY OR INDIRECTLY ARISING OUT OF, UNDER OR IN CONNECTION WITH THIS AGREEMENT AND ANY SUCH TRIAL SHALL BE CONDUCTED SOLELY BY A JUDGE OR AN ARBITRATOR, AS REQUIRED BY THIS AGREEMENT. EACH OF THE PARTIES CERTIFIES THAT NO REPRESENTATIVE, AGENT OR ATTORNEY OF ANY PARTY HAS REPRESENTED, EXPRESSLY OR OTHERWISE, THAT THE OTHERS WOULD NOT, IN THE EVENT OF ARBITRATION OR LITIGATION, SEEK TO ENFORCE THE FOREGOING WAIVERS.

13.18.  Counsel Representation.  EACH PARTY AGREES AND ACKNOWLEDGES THAT HE OR SHE HAS BEEN REPRESENTED BY INDEPENDENT COUNSEL IN CONNECTION WITH THIS AGREEMENT OR BEEN ADVISED THAT HE OR SHE SHOULD BE REPRESENTED BY INDEPENDENT COUNSEL IN CONNECTION WITH THIS AGREEMENT.  IF ANY PARTY DECIDED NOT TO BE REPRESENTED BY INDEPENDENT COUNSEL IN CONNECTION WITH THIS AGREEMENT, HE OR SHE IRREVOCABLY WAIVES ANY AND ALL DEFENSES OR RIGHTS ARISING OUT OF OR RELATED TO SAID DECISION. GERSH AGREES THAT MESTEL HAS DISCLOSED TO HIM, AND HIS ADVISORS, ALL RELEVANT FACTS NECESSARY TO PERMIT HIM TO MAKE A FULLY ENFORMED DECISION TO ENTER INTO THIS AGREEMENT AND THE TRANSACTIONS COMPLETED THEREBY,

13.19.  Disability Examinations.  Each SHAREHOLDER hereby agrees to submit to reasonable examinations promptly upon request if the other SHAREHOLDER has reason to suspect a Disability or the Final Disability Threshold has occurred.

13.20.  SHAREHOLDER Loans.  TEEMAN has loaned the CORPORATION $492,000. GILMARTIN has loaned the CORPORATION $417,970. Such loans shall be paid back (with/without interest) on a pro rata basis to each SHAREHOLDER (based on the then outstanding principal balance of such loans) as cash becomes available, as determined by the CORPORATION's Board of Directors [but in all cases before the payment of any bonuses or dividends or other distributions to the SHAREHOLDERS.

IN WITNESS WHEREOF, this Agreement has been executed in New York, New York, as of the day and year first above written.

_____
SUSAN TEEMAN

_____
MARYBETH GILMARTIN

TEEMAN PERLEY GILMARTIN INC.

By: _____
Name:     Susan Teeman
Title:     President/Secretary

By: _____
Name:     Marybeth Gilmartin
Title:     Vice President

[709472-2]                    11                    Draft 1/23/04

## EXHIBIT A

"Aggregate Compensation" shall mean, during any year, with respect to either SHAREHOLDER, her salary, bonus, benefits, expenses, dividends and other distributions from the CORPORATION.

"Agreement" shall mean this Shareholders' Agreement, as it may be amended, modified, supplemented or restated from time to time.

"Competing Business" any business which is either engaged in the permanent placement of applicants in [fill in positions] or the same or substantially the same business as any business of the CORPORATION.

"CORPORATION" shall have the meaning set forth in the preamble.

"Disability" shall mean, with respect to any SHAREHOLDER, the inability to perform the services for the CORPORATION required by this Agreement or in connection with her employment for the CORPORATION due to physical or emotional or mental incapacity or illness for sixty (60) or more consecutive days or ninety (90) or more days in any twelve (12) consecutive months; provided, however, if the CORPORATION maintains any disability income insurance policy for any SHAREHOLDER, the definition of a disability in such policy shall apply in lieu of the foregoing definition. The determination as to whether a Disability has occurred shall be made by the SHAREHOLDER not suffering from such disability with the supporting diagnosis of two (2) different doctors with relevant experience selected by SHAREHOLDER not suffering from such disability.

"Final Disability Threshold" shall mean with respect to either SHAREHOLDER, she has been unable to perform the services for the CORPORATION required by this Agreement or in connection with her employment for the CORPORATION due to physical or emotional or mental incapacity or illness for 24 consecutive months or any 24 out of 30 months after a Disability first occurred. The determination as to whether a Final Disability Threshold has occurred shall be made by TEEMAN with the supporting diagnosis of two (2) different doctors with relevant experience selected by SHAREHOLDER NOT SUFFERING FROM SUCH DISABILITY.

"Person or person" shall mean any individual, corporation, joint venture, association, joint stock company, trust, limited liability company, foreign limited liability company, partnership (whether general or limited, domestic or foreign), estate, custodian, nominee or any other individual or entity in its own or any representative capacity, any unincorporated organization or government or other entity or political subdivision of any kind.

"Stock Percentage Ownership or Stock Ownership Percentage or Stock Percentage Interest" shall mean, at any relevant time, with respect to either SHAREHOLDER, expressed as a percentage, the number of shares of Stock issued and outstanding and owned by such Person divided by all of the issued and outstanding shares of Stock of the CORPORATION. Each SHAREHOLDER has a Stock Percentage Ownership of 50% on the date hereof.

"Triggering Event" means with respect to either SHAREHOLDER, her death, or if her employment with the CORPORATION is terminated for any reason.