UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| SUSAN TEEMAN, Individually, and as a Shareholder on Behalf of Teeman Perley Gilmartin, Inc., | ) ) ) | CIVIL ACTION NO. 07 CIV 9676 |
| Plaintiff, | ) ) ) | |
| v. | ) ) | |
| MARYBETH GILMARTIN and AMY ARCHER | ) ) ) | |
| Defendants. | ) | NOVEMBER 8, 2007 |

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS AND/OR STAY PROCEEDINGS AND TO COMPEL ARBITRATION**

The Defendants in the above-referenced matter, MARYBETH GILMARTIN ("GILMARTIN"), and AMY ARCHER ("ARCHER"), and TEEMAN PERLEY GILMARTIN, INC. ("TPG"), respectfully submit this Memorandum of Law in Support of their Motion to Dismiss, or in the alternative, to Stay Proceedings and Compel Arbitration.

**I.    INTRODUCTION AND BACKGROUND**

The claims at issue in this action relate to the ownership, management and finances of the nominal Plaintiff, TPG. TPG is a corporation organized under the laws of the State of New York which is engaged in the executive placement business. The Plaintiff, SUSAN TEEMAN ("TEEMAN"), alleges that she and the Defendant, GILMARTIN, are each 50% shareholders of TPG (Complaint, Para. 4).[1] The Defendant, ARCHER, is an employee of TPG who performs bookkeeping functions. (Complaint, Para. 6).

---

[1] GILMARTIN disputes that her ownership interest is only 50% or that TEEMAN currently is a shareholder of TPG. That factual dispute need not be resolved for purposes of deciding this motion.

1

TEEMAN, GILMARTIN and TPG entered into a Shareholders' Agreement dated January 1, 2003. (Gilmartin Affidavit, para. 5, Ex. A).[2] The Shareholders' Agreement addressed issues related to the management of TPG, distributions and compensation to GILMARTIN and TEEMAN as shareholders of TPG, and the disposition of GILMARTIN and TEEMAN's stock in the event of a disability of one of the shareholders. The Agreement also established that GILMARTIN and TEEMAN would serve as directors and officers of TPG.  Following the execution of the Shareholders' Agreement, TEEMAN became disabled and could no longer perform her duties as a director and officer of TPG.  Upon information and belief, TEEMAN has been and continues to collect on one or more disability policies in connection with her disability. (Gilmartin Affidavit, para. 7).  In light of her disability, TEEMAN is obligated to resign her positions as officer and director of TPG and to transfer her stock in TPG to GILMARTIN pursuant to the terms of the Shareholder Agreement.  TEEMAN has failed, neglected and refused to resign her positions or transfer her stock as required by the Shareholders' Agreement. (Gilmartin Affidavit, para. 8).

The Shareholders' Agreement contains a broad arbitration clause which provides as follows:

> Except as set forth below, all disputes arising in connection with this Agreement shall be resolved by binding arbitration in accordance with the applicable Rules of the American Arbitration Association.  The Arbitration shall be held in New York, New York, before a single arbitrator and shall otherwise be conducted in accordance with the American Arbitration Association Commercial Arbitration Rules.

(Gilmartin Affidavit, Para. 5; Ex. A, Shareholders' Agreement, article 13.15).  The only disputes between the shareholders that are excluded from the mandatory arbitration provisions of the Shareholders' Agreement are claims specifically related to confidential information, trade secrets

---

[2] Although dated January 1, 2003, the Shareholders Agreement actually was not executed until January 2004.

or intellectual property of TPG. Defendants are unaware of any dispute between the parties regarding these issues, and certainly the allegations in the present action do not fall within these exceptions.

On or about September 5, 2007, TEEMAN demanded arbitration against GILMARTIN and TPG under the arbitration clause in the Shareholders' Agreement. (Gilmartin Affidavit, para. 9; Ex. B, Arbitration Demand). In her Demand for Arbitration, TEEMAN asserted the following claims:

(1)     That GILMARTIN "breached her fiduciary duties to TPG by, inter alia, fraudulently diverting funds from TPG";

(2)     That GILMARTIN "tortiously interfered" with TEEMAN's alleged contractual right to receive income and debt repayment from TPG;

(3)     That TPG "breached its contractual obligation to pay TEEMAN income and repay a debt owed to her"; and

(4)     A declaration that no "triggering event" under the Shareholders' Agreement had occurred.

(Gilmartin Affidavit, para. 9-10; Ex. B, Arbitration Demand). In her Demand for Arbitration, TEEMAN, individually and derivatively on behalf of TPG, sought an accounting, money damages, and a declaration of her rights under the Shareholders' Agreement. In her Demand for Arbitration, TEEMAN specifically alleged that her claims fell within the arbitration clause of the Shareholders' Agreement.

Shortly after TEEMAN's arbitration demand, the parties executed a document entitled "Agreement Pending Between Gilmartin and Teeman Arbitration" (hereinafter referred to as the "Standstill Agreement"). (Gilmartin Affidavit, Para. 11-12, Ex. C). In the Standstill Agreement,

the parties addressed how they would conduct themselves between the filing of the arbitration and any subsequent arbitration decision or other resolution of TEEMAN's claim and any counterclaims by GILMARTIN.  The parties specifically agreed to mediate the matter prior to the date of any arbitration hearing.  The Standstill Agreement also contemplated that TEEMAN would agree to provide GILMARTIN and her counsel with sufficient medical authorizations to investigate her disability claims and to submit to independent medical examinations for the purposes of determining whether TEEMAN met the "final disability threshold" within the meaning of the Shareholders' Agreement.  GILMARTIN and TPG have substantially performed their obligations under the Standstill Agreement, including making certain payments to TEEMAN, but TEEMAN has failed to fulfill her obligations under the agreement.  In fact, the filing of this lawsuit in and of itself can be considered a breach of the Standstill Agreement.

GILMARTIN and TPG have participated fully in the arbitration proceedings.  On October 29, 2007, the parties, through counsel, participated in a conference call with the case manager at the American Arbitration Association.  During that conference call, the parties agreed that GILMARTIN and TPG need not file their Answers and Counterclaims to the arbitration demand until December 3, 2007.[3]  (Gilmartin Affidavit, Para. 14; Ex. D, E).  Incredibly, just two days later, while in the midst of an arbitration that she demanded, and having executed a Standstill Agreement agreeing to mediate before any arbitration hearing, TEEMAN caused this action to be filed in this Court.  Although Plaintiffs have attempted to couch their claims in this action under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), and have asserted dubious claims against ARCHER, an employee of TPG, the claims raised in this action are virtually identical to the claims raised in the pending arbitration proceeding.  Moreover, the

---

[3] GILMARTIN has filed an answer and counterclaims to the arbitration demand with the American Arbitration Association.  (Gilmartin Affidavit, para. 17, Ex. F).

4

claims clearly fall within the scope of the arbitration clause in the Shareholders' Agreement. Since the claims raised in this action are covered by the arbitration clause in the Shareholders' Agreement, the Court should dismiss this action or, in the alternative, stay these proceedings and compel the Plaintiffs to proceed with the pending arbitration addressing these claims.

## II.     LAW AND ARGUMENT

### A.    The Federal Arbitration Act Governs the Arbitration Provisions in the Shareholders' Agreement, and the Federal Arbitration Act Compels Arbitration of all Claims Arising under the Shareholders' Agreement.

The Federal Arbitration Act ("FAA"), 9 U.S.C. Section 1, et seq., governs the enforceability of arbitration agreements contained within any contract "involving commerce." 9 U.S.C. Section 2. The Supreme Court has held that Congress intended to exercise its commerce powers to the fullest extent when drafting the FAA, and that the FAA is intended to cover all contracts "involving commerce." Allied-Bruce Terminex Cos. v. Dobson, 513 U.S. 265, 277 (1995). Moreover, contracts "affecting commerce" are also covered by the FAA. Id. at 276-77. In her Complaint, TEEMAN has alleged, and therefore admits, that "the affairs of TPG affect interstate and foreign commerce". (Complaint, para. 15). The Shareholders' Agreement involves the management, control and operation of TPG. Since the Plaintiff acknowledges that the affairs of TPG affect interstate and foreign commerce, clearly the Shareholders' Agreement is an agreement that affects interstate commerce. Consequently, the arbitration clause in the Shareholders Agreement is governed by the FAA. See 9 U.S.C. §§ 1-2.

Section 2 of the FAA provides that all arbitration agreements covered by the FAA are "valid, irrevocable, and enforceable, save upon grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Section 3 of the FAA requires Federal Courts to enforce such agreements by compelling arbitration of claims that are covered by a valid

arbitration agreement. See Vera v. Saks & Co., 335 F.3d 109, 116 (2d Cir. 2003) (per curium); Genesco, Inc. v. T. Kakiuchi & Co., Ltd., 815 F. 2d 840, 844 (2d Cir. 1987). Section 3 of the FAA is a mandatory provision that "leaves no place for the exercise of discretion by a district court, but instead mandates that district courts shall direct the parties to proceed to arbitration on issues to which an arbitration agreement has been signed." Genesco, 815 F.2d at 844 (quoting Dean Witter Reynolds, Inc. v. Byrd, 470 U.S. 213, 218 (1985).

The United States Supreme Court has recognized that FAA codifies the strong federal policy favoring the enforcement of arbitration agreements. See e.g. Moses H. Cone Memorial Hospital v. Mercury Construction Corp., 460 U.S. 1, 24-25 (1983); Gilmer v. Interstate Johnson Lane Corp., 500 U.S. 20, 25 (1991). Arbitration agreements promote the interests of the parties to such agreements by permitting a method for resolving disputes that is less expensive and more efficient than litigation. See 9 U.S.C. Section 3; Genesco, 815 F.2d at 844. Arbitration agreements also ease the pressure on an overburdened federal judiciary system. Circuit City Stores, Inc. v. Adams, 532 U.S. 105, 123 (2001). The Court should not permit TEEMAN to undermine the important policy considerations contained within the FAA by asserting arbitrable claims in a judicial forum, particularly when she has already commenced an arbitration on virtually the same claims.

  **B.**   **Plaintiffs' Claims in this Action are Covered by the Arbitration Clause in the Shareholders' Agreement, and the Court Should Dismiss this Action or, in the Alternative, Stay Proceedings on this Action and Compel Plaintiff to Arbitrate Said Claims.**

The Second Circuit has established four factors to be considered when deciding if an action should be dismissed or stayed because the claims are covered by an arbitration agreement: (1) whether the parties agreed to arbitrate the dispute; (2) whether the asserted claims fall within the scope of the arbitration agreement; (3) whether Congress intended any federal statutory

claims asserted by the plaintiff to be non-arbitrable; and (4) if the court concludes that some but not all of the claims are arbitrable, whether the remaining claims should be stayed pending arbitration. Genesco, Inc. v. T. Kakiuchi & Co., 815 F.2d 840, 844 (2d Cir. 1987).

### 1. TEEMAN, GILMARTIN and TPG have agreed to arbitrate their claims.

The Court's first area of inquiry is to determine whether TEEMAN, GILMARTIN and TPG actually entered into an agreement to arbitrate claims. In making this determination, courts generally apply ordinary state law principles governing the formation and enforceability of contracts. First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 944 (1995). However, the Court must be mindful that the Supreme Court has clearly stated that in enacting Section 2 of the FAA Congress set forth a national policy favoring arbitration and eliminating the power of states to require a judicial forum for the resolution of claims which the contracting parties agreed to resolve by arbitration. Southland Corp. v. Keating, 465, U.S. 1, 7 (1984). The FAA pre-empts any state laws that impermissibly burden arbitration agreements or limit the FAA's provisions which favor arbitration agreements. Id. As such, only "generally applicable contract defenses, such as fraud, duress, or unconscionability may be applied to invalidate arbitration agreements without contravening Section 2." Doctor's Assoc. v. Casarotto, 517 U.S. 681, 687 (1996).

Here, it is clear that TEEMAN, TPG, and GILMARTIN entered into the Shareholders' Agreement. (Gilmartin Affidavit, para. 5-6). TEEMAN, in fact, has already initiated an arbitration proceeding admitting the execution of the Shareholders' Agreement and acknowledging that the arbitration clause supports a demand for arbitration. (Gilmartin Affidavit, para. 9, Ex. B). Having filed an arbitration demand under the Shareholders' Agreement, there is no way that Plaintiff can conceivably argue that she did not enter into a

Shareholders' Agreement containing the arbitration clause. Consequently, Plaintiff must arbitrate "all disputes" arising in connection with the Shareholders' Agreement.

### 2. Plaintiff's claims in this action fall within the scope of the arbitration provisions of the Shareholders' Agreement.

The Court's second area of inquiry is whether the Plaintiff's claims fall within the scope of the arbitration agreement. See Genesco, 815 F.2d at 844. Since federal policy favors arbitrations of disputes, Courts have read arbitration clauses broadly. Moses H. Cone Memorial Hospital, 460 U.S. at 24-25. There is no requirement that the arbitration agreement describe with particularity the legal claims covered. Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, 473 U.S. 614, 625 (1985) (rejecting argument that arbitration clause must specifically mention a statute giving rise to the claims that a party to the clause seeks to arbitrate). "In determining whether a particular claim falls within the scope of the parties' arbitration agreement [courts] focus on the factual allegations in the complaint rather than legal causes of action asserted." Oldroyd v. Elmira Savings, FSB, 134 F.3d 72, 77 (2d Cir. 1998). If the allegations in the Complaint merely "touch matters" which are covered by the parties' arbitration agreement, those claims must be arbitrated regardless of the specific labels the Plaintiff chooses to give to those claims. ADR/JB Corp. v. MCY III, Inc., 299 F. Supp. 2d 110, 115 (E.D.N.Y. 2004) (quoting Genesco, 815 F.2d at 846.

In this case the arbitration clause covers "all disputes" arising in connection with the Shareholders' Agreement, with the only exceptions being claims related to intellectual property, confidential information and solicitation of business, which issues are not applicable to the claims in this case. The Shareholders' Agreement containing the arbitration clause covers the management of TPG (Article 2.1), the distributions and compensation to shareholders (Article 2.2), access to information regarding the company (Article 3.1), the ownership of stock by the

shareholders (Article 4), the transfer of any stock of TPG (Article 5.1), the payment of shareholder loans (Article 5.7), and the obligations of the parties with respect to a disability of a shareholder (Articles 2.1, 2.2, 5.3, 5.7). (Gilmartin Affidavit, Para. 5, Ex. A). TEEMAN's claims asserted against GILMARTIN essentially are limited to allegations that GILMARTIN caused TPG to use corporate assets to pay personal expenses. (Complaint, Paras. 7-13). The Shareholders' Agreement, on its face, is intended to deal with the relative obligations and responsibilities of TEEMAN and GILMARTIN with respect to the operation and management of TPG and the compensation each of them is to receive in connection with their operation and management of TPG. Clearly, allegations of an improper transfer of corporate assets to the personal benefit of GILMARTIN are claims arising under the Shareholders' Agreement.[4]

Furthermore, TEEMAN herself believes, and has acknowledged in her Demand for Arbitration, that these claims are covered by the arbitration provisions of the Shareholders' Agreement. In her arbitration demand, TEEMAN specifically alleged that GILMARTIN "breached her fiduciary duties to TPG by fraudulently diverting funds" from TPG. (Gilmartin Affidavit, para. 9-10, Ex. B). This is precisely the allegation set forth in the Complaint in this action. (Complaint, para. 7). TEEMAN cannot credibly argue in her arbitration demand that these claims of breach of fiduciary duty and fraudulent diversion of assets of TPG are covered by the arbitration clause in the Shareholders' Agreement, while at the same time arguing in this case that those same claims are not covered by the arbitration clause.

### 3. TEEMAN's claims in this lawsuit have not been exempted by Congress from the mandatory arbitration provisions of the FAA.

The Court's third area of inquiry is whether TEEMAN's statutory claims in this case have been exempted by Congress from arbitration. See Genesco, 815 F.2d at 844. In this case,

---

[4] GILMARTIN denies these allegations.

9

TEEMAN's factual claims attempt to plead a violation of the RICO statutes, 18 U.S.C. §1961 *et seq*. When Congress does not explicitly address the question of arbitration, Courts are to presume that mandatory arbitration of a matter brought under federal law is permitted. Circuit City, 532 U.S. at 120-124. The federal policy to endorse arbitration agreements is not diminished when a party bound by an agreement raises a claim premised on statutory rights. Shearson/American Express, Inc. v. McMahon, 482 U.S. 220, 226 (1987). "The burden is on the party opposing arbitration…to show that Congress intended to preclude a waiver of judicial remedies for the statutory rights at issue." Id. at 227.

The Supreme Court has addressed the issue of whether claims arising under the RICO statute may be arbitrated. In Shearson/American Express, Inc. v. McMahon, 482 U.S. 220 (1987), the Supreme Court stated: "…there is nothing in the text of the RICO statute that even arguably evinces congressional intent to exclude civil RICO claims from the dictates of the Arbitration Act." Id. at 238. In holding that civil RICO claims are arbitrable, the Court rejected arguments that the criminal provisions of RICO, the punitive damages components of RICO, or the complexity of RICO claims in any way rendered a civil RICO claim non-arbitrable. Id. at 239-242. Since Congress has not exempted civil RICO claims from the mandatory arbitration provisions of the FAA, and the claims in this action clearly fall within the scope of the arbitration clause in the Shareholders' Agreement, the Court should dismiss this action or in the alternative, stay the proceedings and compel arbitration on TEEMAN's claims.

> **C.    Since an Arbitration is Already Pending in which TEEMAN's Claims and GILMARTIN's Counterclaims are Being Addressed, the Court should Dismiss the Plaintiff's Complaint and Direct the Parties to Proceed with Arbitration.**

After determining that the claims in the Complaint are subject to arbitration, the Court may stay the proceedings this action until the completion of the arbitration pursuant to Section 3

of the Federal Arbitration Act. 9 U.S.C. §3. Although the Court may enter a stay, Defendants submit that dismissal of the claims is a more appropriate remedy in this case in light of the fact that there is already an arbitration pending in which TEEMAN, GILMARTIN, and TPG are actively participating. Once a Court determines that a Complaint contains arbitrable claims, "no useful purpose will be served by granting a stay…and thus [the] action [should be] dismissed." Lewis Tree Service, Inc. v. Lucent Technologies, Inc., 239 F.Supp. 2d 332, 340 (S.D.N.Y. 2002) (dismissing action without prejudice). See also, Sinnett v. Friendly Ice Cream Corp., 319 F.Supp. 2d 439, 445 (S.D.N.Y. 2004) ("There is no reason for this Court to stay [rather than dismiss] this action because all of [plaintiff's] claims are subject to resolution through arbitration.") . Since the claims in this action are arbitrable and are actually being arbitrated, the Court should dismiss this action.[5]

### D. The Claims against ARCHER Arise from her Status as an Employee of TPG, and, Therefore, the Claims against her are also Subject to the Arbitration Provisions of the Shareholders' Agreement.

ARCHER is an employee of TPG who performs bookkeeping duties. (Gilmartin Affidavit, Para. 16). TEEMAN alleges and acknowledges in her Complaint that ARCHER is an employee of TPG "responsible for supervising and maintaining TPG's financial transactions and bookkeeping." (Complaint. Para. 6). The underlying allegations in the Complaint are that GILMARTIN fraudulently paid personal expenses from the assets of TPG while representing to TEEMAN and governmental taxing authorities that those expenses were for business. This is precisely the claim which TEEMAN has asserted against GILMARTIN and TPG in her demand for arbitration. The only "new" allegations in this action are that ARCHER, at GILMARTIN's direction, participated in and aided and abetted GILMARTIN's alleged fraud. Indeed, virtually

---

[5] If the parties had completed the arbitration that TEEMAN commenced, her claims in this action, even though alleging RICO claims, would have been barred by the doctrine of res judicata since the arbitration claims are based on the same predicate act. See Cullen v. Paine Webber Group, Inc., 689 F. Supp. 269, 277 (S.D.N.Y. 1988).

all of the allegations against ARCHER claim that her conduct was "at [GILMARTIN's] direction." (Complaint, Paras. 7, 12, 13). Moreover, Plaintiff acknowledges that her claims that ARCHER participated in the alleged scheme to defraud TPG and the governmental taxing authorities were "by reason of her role as the bookkeeper and as the person who prepares the checks at TPG." (Complaint, Para,. 17).

GILMARTIN suspects that the only reason that Plaintiff has named ARCHER as a Defendant in this action is to attempt to circumvent the mandatory arbitration provisions in the Shareholders' Agreement. Since the claims against ARCHER arise from her status as an employee of TPG, however, the claims should be arbitrated. An employee acting as an agent of his employer may invoke the benefits of the employer's arbitration agreement to arbitrate claims with the agreement's counterparty even where the employee is not a signatory. Roby v. Corp of Lloyds, 996, F.2d 1353, 1360 (2d Cir. 1993). "The Federal courts have consistently afforded agents the benefit of arbitration agreements entered into by their principals to the extent that the alleged misconduct relates to their behavior as officers or directors or in their capacities as agents of the corporation." Hirschfeld Productions, Inc. v. Mirvish, 88 N.Y. 2d 1054, 651 N.Y.S. 2d 5, 673 N.E. 2d 1232 (1996), (citing Roby v Corporation of Lloyds, 996 F. 2d 1353, 1360 (2d Cir.), cert denied 510 U.S. 945 (1993); Letizia v Prudential Bache Sec., 802 F.2d 1185, 1188 (9th Cir. 1986); Arnold v. Arnold Corp., 920 F.2d 1269, 1281 (6th Cir. 1990); Pritzker v Merrill Lynch, Pierce, Fenner & Smith, 7 F.3d 1110, 1121-1122 (3d Cir 1993)). " If it were otherwise, it would be too easy to circumvent [arbitration] agreements by naming individuals instead of the [principals] themselves." Roby, 966 F.2d at 1360.

Courts have routinely found that the scope of arbitration agreements cover collateral matters and extend the disputes between corporate parties and their employees and agents. See

Campaniello Imports, Ltd. V. Saporiti Italia, Sp. A., 117 F.3d 655, 668-69 (2d Cir. 1997); JLM Industries, Inc. v. Stolt-Nielsen SA, 387 F.3d 163, 177 (2d Cir. 2004); Smith/Enron Cogeneration, Ltd. Partnership, Inc. v. Smith Cogeneration International, Inc., 198 F.3d 88, 98 (2d Cir. 1999) (party attempting to resist arbitration was estopped from doing so because it treated non-signatory companies and their signatory assignees "as a single unit" in a related lawsuit); Provident Bank v. Kabas, 141 F.Supp. 2d 310, 317 (E.D.N.Y. 2001).  It is clear that the claims asserted against the Defendant, ARCHER, all relate to her position as an employee of TPG.  Since TPG is a signatory to the arbitration clause in the Shareholders' Agreement, as is TEEMAN and GILMARTIN, ARCHER is entitled to the benefits of that arbitration agreement despite the fact that she herself is not a signatory.  Roby, 996 F.2d at 1360.  Consequently, the claims against ARCHER in this action are also subject to the mandatory arbitration provisions in the Shareholders Agreement and should be dismissed or stayed.

    **E.**    **To the Extent that any Claims against ARCHER are not Covered by the Arbitration Clause of the Shareholders' Agreement, the Court Should Decline to Exercise Supplemental Jurisdiction over said Claims or, in the Alternative, the Court Should Stay Proceedings on those Claims Pending Arbitration of the Claims against GILMARTIN.**

It is clear from the allegations in TEEMAN's complaint that her claims are primarily directed against GILMARTIN, and her claims against ARCHER are only asserted in her position as an employee of TPG following orders for her superiors at TPG.  As argued in subsection D above, ARCHER should be afforded the same benefits as TPG under the arbitration provisions in the Shareholders' Agreement.  Even if she were not entitled to the benefits of the arbitration clause, however, the Court nevertheless has the inherent power to stay these proceedings against her pending the completion of the arbitration filed by TEEMAN against GILMARTIN and TPG. Provident Bank v. Kabas, 141 F.Supp.2d 310, 317 (E.D.N.Y. 2001).  If the Court is not inclined

to dismiss the claims against ARCHER, the Court should nevertheless exercise its discretionary power to stay these proceedings against her.

While Plaintiff may argue that her Fourth Claim for Relief relates to a personal relationship between ARCHER and TEEMAN involving the procurement of home insurance for TEEMAN, TEEMAN has alleged no facts which support a claim that a fiduciary duty exists between ARCHER and TEEMAN. Certainly, such claims do not involve RICO or any other federal question. Moreover, there appears to be no diversity jurisdiction that this Court can exercise over claims against ARCHER, in that Plaintiff has alleged that both TEEMAN and ARCHER are citizens of the State of New York. (Complaint, paras. 3, 6). To the extent that the Court has jurisdiction over the Fourth Claim for Relief at all, it can only be pursuant to the Court's supplemental jurisdiction under 12 U.S.C. §1367(a). In the event that the Court dismisses the remaining claims in this action as argued by the Defendants, but chooses not to dismiss the Fourth Claim for Relief, Defendants submit that the Court should decline to exercise its jurisdiction over that claim. 28 U.S.C. Section 1367(c)(3); see also Fields v. Merrill Lynch Pierce Fenner & Smith, Inc., 301 F.Supp. 2d 259 (S.D.N.Y. 2004); Adee Motor Cars, LLC v. Amato, 388 F.Supp.2d 250 (S.D.N.Y. 2005).

## III. CONCLUSION

For all of the foregoing reasons, the Defendants respectfully move the Court to dismiss this action or, in the alternative, to stay the proceedings on this action and to compel the Plaintiff to proceed with the pending arbitration of these claims.

<div style="margin-left:40%">

THE DEFENDANTS,
MARYBETH GILMARTIN,
AMY ARCHER, and TEEMAN
PERLEY GILMARTIN, INC.

BY: /s/ _____
Jonathan P. Whitcomb (jw3245)
DISERIO MARTIN O'CONNOR
& CASTIGLIONI LLP
One Atlantic St.
Stamford, CT 06901
203-358-0800 (phone)
203-348-2321 (fax)
jwhitcomb@dmoc.com (email)

420 Lexington Avenue, Suite 1430
New York, NY 10170

</div>

## **CERTIFICATION**

      I hereby certify that on November 8, 2007 a copy of the foregoing was filed electronically. Notice of this filing will be sent by email to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filings as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

Judd Burstein, Esq.
Judd Burstein, P.C.
1790 Broadway, Suite 1501
New York, NY 10019

                                                   /s/
                                         Jonathan P. Whitcomb

H:\LIT\SMH\25207.memo of law in support of motion to dismiss.doc